# Wheeling.

17 585
59 367

## McCormick v. Bailey.

Decided March 26, 1881.

(Haymond, Judge, absent.)

A case in which an attempt to set up a partnership was not sustained by the testimony, and the decree of the circuit court was therefore reversed, and the bill and amended bill dismissed.

1881
Spring
Special Term.

McCormick
v.
Bailey.

Appeal from and *supersedeas* to a decree of the circuit court of the county of Taylor rendered on the 11th day of September, 1877, in a cause in said court then pending, wherein Jacob B. McCormick was plaintiff, and Silas P. Bailey was defendant, allowed upon the petition of said Bailey.

Hon. Charles S. Lewis, judge of the second judicial circuit, rendered the decree appealed from.

Moore, Judge, furnishes the following statement of the case:

In the circuit court of Taylor county Jacob B. McCormick filed his bill in equity against Silas P. Bailey, alleging that he, complainant, has made from divers persons " conditional or optional purchases" of certain tracts of land, especially stated in said bill, " or for the purchase of the coal contained therein;" and "that about the time these contracts were made, the plaintiff

74

1881.
Spring
Special Term.

McCormick
v.
Bailey.

and defendant, Silas P. Bailey, made and entered into an agreement that he, Bailey, should assist the plaintiff in making sale of the said land and coal, embraced in the above mentioned contracts, by furnishing plats of the said land and coal and samples of the ·coal, whenever required, at his own expense, and that the plaintiff should open negotiations for the sale of the said land and coal, and that if a sale should be effected of the said land and coal, the amount, for which the same should be sold over and above what the plaintiff was to pay for the same, should be equally divided between the plaintiff and the defendant; that in pursuance of the said agreement the plaintiff did at once open correspondence with different persons to try to find a purchaser and effect a sale of the said lands and coal; that after considerable correspondence with different persons the plaintiff found a disposition in the officers, or some of the officers, and owners of the Newburgh Orrel Coal Company, to purchase the land and coal embraced in the contracts of the plaintiff.

" Meantime the time mentioned in the contracts made by the plaintiff for the purchase of said land and coal was about to expire; whereupon the plaintiff sent the defendant, Bailey, to the different parties to renew the contracts, and get the time extended until the —— day of April, 1871, which he did in the name of the plaintiff; and when the said contracts were about to expire, in April, 1871, the plaintiff again sent the defendant to renew them in the name of the plaintiff, which he did, extending the time to the 30th day of September, 1871. Plaintiff continued his correspondence and negotiations with John Henry, an officer or agent of the Newburgh Orrel Coal Company, and finally, on or about the 1st day of September, 1871, he, the plaintiff, received a letter from the said John Henry to the effect that the said Newburgh Orrel Coal Co. would be on to look at the said land and coal, and if the coal suited their purposes would close the purchase of the same at

$—— per acre. At the time of the receipt of this letter the time, to which the said optional contracts had before been extended, was about to expire, and the plaintiff placed the letter of the said Henry in the hands of the defendant, Bailey, and sent him to get a further extension of the time in the said contracts, and when that should be done to close the contract with the said officers of the Newburgh Orrel Coal Co. for the sale of the said land and coal.

"Plaintiff charges, that the defendant, Bailey, after receiving from the plaintiff the said letter from the said Henry, and with the full knowledge and belief on his part that the said land and coal were as good as sold by the plaintiff, went to the persons with whom plaintiff had the contracts, and falsely and fraudulently represented to them, that the plaintiff could not sell the said land and coal, but that he, Bailey, could and would do so, if they would give him optional contracts, or give him in his name, the extension of the contracts plaintiff had with them.

"Plaintiff charges, that in consequence of the said false representation of the said Bailey the following persons, with whom the plaintiff had contracts, gave to the said Bailey extensions of the same in his, Bailey's, name, and on the same terms as of the contracts with the plaintiff, to wit: Jehu Smith, Cornelius Lawson, Nimrod Brohard, Benjamin F. Bailey and Thomas Bailey; that intending further to cheat and defraud the plaintiff, the defendant made a contract with George M. Whitescarver for the extension of the plaintiff's contract with the said Whitescarver, whereby he agreed to give to the said Whitescarver $25.00 per acre for all his land, and one half of all it should be sold for above that sum, when he could have renewed the contract on the same terms it was made on at first, and the same terms the others were renewed upon; that William Bailey and George and Josephus Bailey refused to renew their contracts with

the said Silas P. Bailey, which they had made with the plaintiff."

The bill also charges, "that the said officers of said coal company came on according to the promise made by Henry in his said letter to the plaintiff, and closed the purchase of the said land and coal with the defendant, Bailey, according to the promise in the letter from Henry to the plaintiff." The bill then alleges, that the defendant sold the coal in the divers tracts of land at certain designated prices, and the land in certain other tracts at stated sums, and that he, plaintiff, is entitled to receive from the defendant certain specified sums as his part of said sales; and prays for an account to be taken, and a decree in favor of complainant.

Defendant, Bailey, answered the bill, admitting that complainant made "the several conditional or optional purchases or contracts for the sale of the coal and lands in the bill and exhibits mentioned, and on the terms and conditions in said exhibits specified, and none other;" but having no personal knowledge thereof, "defendant" does not admit the several renewals and extensions thereof up to the first of April, 1871, as alleged in said bill." The answer denies that defendant ever had or claimed to have any interest whatever in the subject-matters in the said several contracts, or that he was in any manner or to any extent bound by the stipulations contained in said contracts. It denies, that at the time said contracts were entered into, "or any time afterwards during their existence defendant ever made or entered into any arrangement with the plaintiff whereby he became entitled to have or claim an equal share of the profits, that might result to the plaintiff by a sale of the said lands and coal when the same should be thereafter made." It denies, that there ever existed between plaintiff and defendant any such agreement or contract as set forth in the bill, or that "any partnership ever existed between them in regard to the purchase or sale of the said lands and coal, or any part thereof or speculation therein;"

but alleges a special contract between them, whereby defendant agreed with the plaintiff "to procure (to be made at his own expense) a survey and plat of the lands and coal embraced within said contracts, to mine for and furnish to the complainant at such times and to such places samples of the said coal as the plaintiff might from time to time require, which was in like manner to be done at the expense of defendant," for which plaintiff was to pay him the sum of $1,000.00 "no more and no less," whenever he, plaintiff, should succeed in effecting a sale of said lands and coal; but if plaintiff should fail to make a sale of said lands and coal within the time specified in said contracts, defendant was to receive no portion of said sum of $1,000.00, and all the expenses incurred by him in making said survey and plats and in mining for and forwarding said samples of coal should be borne and lost by respondent alone, and "that no other or different contract or agreement in regard to said lands and coal ever existed between plaintiff and respondent;" that defendant furnished samples of coal at several times, as often as directed by plaintiff, and caused a survey and plat of said lands and coal to be made, all of which expenses were paid by defendant as agreed.

It denies, that defendant was sent by plaintiff to the parties to obtain renewals or extensions of his optional contracts to April, 1871, but that in March, 1871, plaintiff solicited him to call upon the parties on plaintiff's behalf to request them to extend or renew his contracts until September 1, 1871, and "as a motive to induce them to do so he authorized and directed defendant to assure them, that if they would grant to him this favor, and he should fail to make a sale of the said lands and coal on or before the 1st day of September, 1871, he would have nothing more to do with it"; that in accordance with the request of plaintiff, Thomas Bailey, Jehu Smith, and defendant, on the — day of March, 1871, did agree to extend the said optional contracts un-

til the 1st day of September, 1871, and *no longer* ; and in making said extension it was expressly stipulated, that if said optional contracts were not complied with by the 1st day of September, 1871, they should be null and void." None of the other parties renewed or extended their contracts ; that plaintiff failed to comply with the provisions of said several contracts, or any of them; and that said contracts thenceforward became and were null and void, and plaintiff no longer had any interest in said lands or coal, all his interest having ceased and determined before and on September 1, 1871.

The answer admits, that after all right of plaintiff in said optional contracts had determined, and when defendant's right to compensation under his said special contract had likewise ended, he did enter into optional contracts with said parties, and with other parties, for the purchase of their coal, in many instances of a very different character, taking upon himself great and additional risks ; and after great labor effectuated a sale of all the interests he had so acquired including the lands of Smith, and Brohard, and Whitescarver, at the uniform price of $49.00 per acre, and gave to his vendees, in further consideration, nearly a year's additional personal service. He denies, that plaintiff ever placed into his hands the letter alleged in the bill to have been received by plaintiff from Henry, and denies, that he received therefrom any knowledge or information, that the said lands and coal were as good as sold by plaintiff to the company. The answer denies all the other material allegations of the bill, and all charges of fraud.

Afterwards, January, 1876, the plaintiff filed an amended bill, by which he alleges: " that it was at first agreed by and between your orator and the said Silas P. Bailey, defendant, that the defendant should be compensated for his services and assistance to be by him rendered about the sale of the coal-interest in the said original bill mentioned out of the profits. which should be realized from any sale thereof, which should be made,

such sum or portion of such profits as should be satisfactory to the defendant, even if it should require half of such profits.

It was also at one time proposed, and may have been agreed to, that defendant should receive, as compensation for such services as he had undertaken to perform, or should perform in case a sale should be effected, the sum of $1,000.00."

The remainder of the amended bill brought nothing material into the case, but is merely argumentative; and what has been cited, is done to show how the plaintiff understood the matter, and for similar reason, to ascertain the defendant's understanding of the matter, only so much of his answer is cited as bears upon that point.

The defendant's answer to the amended bill denies the allegations thereof, and repeats the allegations of his former answer as to what the understanding between them really was, and that the rights of the plaintiff under all agreements and contracts ceased and forever determined on the 1st day of September, 1871, at which time all said contracts and renewals and extensions thereof, then in force, expired, and that after that day the plaintiff never had any rightful or just claim in or to the lands and coal, or any of them, specified in said options.

On the 7th day of September, 1876, the court made an order referring the cause to a commissioner to ascertain and report the amount of profits made by Bailey in said sales, &c.; and on the 11th day of September, 1877, the court rendered the following decree :

" This cause came on again this day to be further heard on the bill and amended bill, and answers thereto, and replication to said answers, and exhibits and depositions, and exceptions of defendant to the depositions of John H. Henry, Lawrence Henry and Aaron T. Batson, and decrees heretofore made in the cause, and report of master commissioner Dent, and exceptions to said report taken by defendant, and argument of counsel. On con-

sideration whereof the said exceptions taken to said depositions of John H. Henry, Lawrence Henry and Aaron T. Batson are sustained, and said exceptions taken to said report are overruled, and it is adjudged, ordered and decreed, that the plaintiff recover from the defendant the sum of three thousand four hundred and ninety-one dollars and eighty-three cents ($3,491.83), with interest thereon from the 3d day of September, 1877, (that being one half of the profits made by the defendant on the lands and coal in the bill and proceedings mentioned, on which the plaintiff had obtained options, according to the report of master commissioner Dent, with interest on the said half from the 15th day of January, 1872, the time when the same should have been paid to the plaintiff, computed to the 3d day of September, 1877,) together with his costs herein expended."

Upon the petition of the defendant, Bailey, an appeal from and *supersedeas* to said decree were allowed March 30, 1878.

*Martin* and *Woods*, for appellant, cited the following authorities:

Story on Partnership, § 350; Kent Com. 64; 9 Gratt. 379.

*E. Maxwell*, for appellee, cited the following authorities:

Brown on Stat. of Frauds, § 262; 41 Vt. 380; *Sanford* v. *James*, 35 Cal. —; 5 Hare 369; 1 Russ. & M. 132; 1 Sim. 52; Story on Agency, §§ 192, 207, 214, 340; *Id.* § 334; Story Eq., §§ 313, 319; Story Eq. Pl. §§ 904, 905; 1 Dan. Chy. Pl. & Pr., §§ 463, 466; 9 Wall. 1; Story Eq. Pl. §§ 40, 43, 257.

MOORE, JUDGE, announced the opinion of the Court:

As to the plaintiff's understanding of the agreement between himself and the defendant, we are left to his

original bill, amended bill, and depositions; and they clearly show such a state of uncertainty as to forcibly impress the enquiring mind with the idea of insincerity on the part of the plaintiff, or else such a defect in his memory as to weaken confidence in the allegations of his bills and in his testimony; and when taken in connection with the testimony in the case, without looking into the mere technicalities raised by the appellant, we are forced to say, that upon the merits of the case the decree complained of is without foundation in law and equity, and that the proper order should have been a dismissal of the bill for want of equity.

The case justifies the language of the petition, that: " By the answer to the original and amended bills and by the proofs taken, it fully appears that the defendant made no profits upon the interests formerly embraced in the plaintiff's said optional contracts, but in fact sustained heavy losses; that all the profits he actually realized in the transaction were realized chiefly upon lands and interests in lands in which the plaintiff never had, and in which he does not even pretend to claim, any interest in either of his said bills." The amended bill brought nothing material into this controversy, while the defendant denied in his answer thereto every material allegation thereof entitling plaintiff to the relief prayed for. The proofs in this cause wholly fail to show that any special or general partnership existed between the plaintiff and defendant, or that he stood in such confidential relation to the plaintiff as precluded him from making said optional purchases for himself alone, or such as gave the plaintiff any right to require him to account for the profits made thereby. But had a general partnership in fact existed, then the account thereof ought to have been settled, and the value of the assets belonging thereto which remained in kind ought to have been ascertained and divided between them, and the defendant ought not to have been charged with the nominal value thereof in money. The fact is, that the plaintiff's rights had

1881
Spring
Special Term.

McCormick
v.
Bailey.

fully expired, certain of the former grantors had refused to renew or extend the options, and at the time that Bailey made his contract with the parties, McCormick's options had expired, leaving the field open to the world, as the evidence fully shows.

Taking this view of the case, it is plain, that the decree complained of is erroneous, not being warranted by the evidence, and must therefore be reversed, and the bill and amended bill must be dismissed, with costs, for the want of equity. And also the judgment on the forthcoming bond is therefore null and void, and should therefore be set aside and reversed.

JUDGES GREEN AND JOHNSON CONCURRED.

DECREE REVERSED AND THE BILLS DISMISSED WITH COSTS, AND THE JUDGMENT SET ASIDE AND REVERSED.