# CHARLESTON.

## VANSCOY v. STINCHCOMB.

Submitted June 15, 1886—Decided November 25, 1886.

1. *Supersedeas*—JURISDICTION—FORTHCOMING BOND.

The proceedings in a chancery cause and a decree for the plaintiff for his costs and the proceedings and judgment on a forthcoming bond given on an execution issued on such decree together constitute one proceeding, so far as a *supersedeas* from this Court is concerned, when such decree is appealed from; and, if this Court has jurisdiction to review the decree in the chancery cause, it will have jurisdiction also to award a *supersedeas* to the judgment on the forthcoming bond, though the amount of such judgment be less than one hundred dollars. (p. 269.)

2. EXCEPTIONS—WAIVER.

Exceptions to a deposition (except upon the ground of incompetency, when no exception is necessary), if not brought to the notice of the court below or passed upon by that court, should be considered by the appellate court as having been waived, and a general decree against the party making the exception can not be considered as involving a decision upon the exception. (p. 270.)

3. WITNESS—DEPOSITION—COMPETENCY.

Though a witness, when his deposition was taken, was incompetent to testify, because he was a party to a cause or had a direct interest in the result of the cause, yet if he was afterwards rendered competent to testify despite his common-law disabilities by virtue of our present statute-law, and at the time such deposition is read at the hearing of the cause, he is competent to testify, such deposition

will be read and considered, just as if it had been taken, when it was read, and when the witness was competent to testify. (p. 271.)

4. TITLE TO LAND—PURCHASE-MONEY.

A plaintiff has no legal or equitable title to a tract of land, so as to justify him in selling it and in enforcing the collection of the purchase-money-bonds, though he has a contract in writing with one, who has a clear legal title to the land, whereby this legal owner of the land has agreed to convey to him this land, upon condition that he, said plaintiff, shall convey to such owner of such land another tract of land and make him a title thereto free from all incumbrances, if he is unable to make such conveyance, and others are in the adversary possession of the tract of land claimed by the plaintiff and have been for many years, and the plaintiff never has been in possession of such land. (p. 272.)

5. CO-DEFENDANTS—INJUNCTION—PURCHASE-MONEY.

If he should sell such land and assign the bond given for the purchase money to another for value, and such other should obtain a judgment on such puchase-money-bond and should be enjoined in a suit, in which such assignor of such bond was also a party, and be prohibited perpetually from collecting such judgment, such assignee of such bond is entitled to a decree over against his co-defendant for the amount he paid him for such bond and costs. (p. 275.)

Statement of the case by GREEN, JUDGE:

John Vanscoy in May, 1854, filed his bill in the Circuit Court of Barbour county setting out, that Thomas Stinchcomb and Isaac McClasky entered into a contract for the exchange of one hundred and fifty acres of land in Ritchie county claimed by Stinchcomb, but which, it afterwards turned out, he had no title to either legal or equitable, for a tract of land of fifty-eight acres owned by McClasky, to which he had a perfect title legal and equitable; and they agreed that each in the deed, he should make, would warrant the title of the land and covenant, that he had a good and indefeasable title in fee simple. Stinchcomb on May 7, 1850, entered into a contract with the plaintiff, Vanscoy, to sell the fifty-eight acres in Barbour county, which he got by this exchange of lands, for $350.00, of which $150.00 was paid by the plaintiff, Vanscoy, to him in cash; and for the balance he executed to Stinchcomb two bonds, one for $90.00 and the other for $84.00, each bearing interest from its date and payable at a future day, and each bond on the day it fell due

amounting with the interest thereon to $100.00. Stinchcomb assigned the bond for $84.00 to William Hall and the bond for $90.00 to J. M. Bennett. In the fall of 1853 Hall as assignee of Stinchcomb having sued on the bond assigned to him obtained a judgment, the defendant, Vanscoy, relinquishing his plea acknowledging the plaintiff's action with a reservation of equity. The judgment was for $84.00 principal with interest from December 25, 1852, and costs; and J. M. Bennett suing in said court as the assignee of Stinchcomb obtained a judgment by default in March, 1854, for $90.00 with interest from December 25, 1851, and costs.

Stinchcomb and McClasky rescinded their contract, because Stinchcomb had no title to the one hundred and fifty acres of land in Ritchie county; and each took back his tract of land. This rescission of the contract, though made after Vanscoy had purchased the fifty-eight acres in Barbour from Stinchcomb, was made without the knowledge or consent of the plaintiff. The bill charges, that, when Stinchcomb made this exchange of land, he knew he had no title, legal or equitable to the one hundred and fifty acres in Ritchie county. On Nov. 5, 1851, long before the rendition of either of these judgments against him Vanscoy having ascertained this to be the state of the case obtained from Stinchcomb a rescission of the contract made with him, Stinchcomb refunding to him the cash-payment, which he had made, by transferring to him two notes of another person, and binding himself to pay to the several holders of the bonds for $90.00 and $84.00 their respective amounts, when they should become due and were presented, Vanscoy having paid and satisfied Stinchcomb for the same, so that he, Vanscoy, should be entirely relieved from paying the same. This contract is in writing and the above is the substance of it.

The plaintiff in his bill states, that Stinchcomb informed him, that one of the bonds was in the hands of a third person; but he, the plaintiff, did not know, in whose hands the bond was, nor the purpose, for which it was put there; and that he had no notice of the assignment of the note to Hall, till after he had thus rescinded the contract. He says, he heard Hall admit, that the consideration, for which Stinch-

comb assigned to him the bond for $84.00, wholly failed. The prayer of the bill is, that Hall, Stinchcomb and Bennett be made defendants and answer this bill on oath, and that said judgment may be perpetually enjoined, and for general relief. The bill was sworn to by Vanscoy; and the injunction prayed for was granted on May 11, 1854, on the usual terms, which were complied with, and the injunction took effect.

Bennett filed an answer, in which he says, he knows nothing of the transactions between McClasky and Stinchcomb named in the bill, or what was the consideration for the bond given by Vanscoy to Stinchcomb, which was assigned to him. He relies on the provision in the contract of rescission above mentioned as showing, that, when this contract between Stinchcomb and Vanscoy was made, Vanscoy had notice of the assignment of this bond for $90.00 to him, Bennett. This answer was sworn to.

William Hall filed his answer on oath, in which he denies, that the consideration upon which Stinchcomb assigned to him the bond for $84.00 had failed in whole or in part, or that he ever made any such admission. The bond was assigned to him some time in 1851, and as soon as he could, he notified Vanscoy, that he held the bond.

This cause was set for hearing at October rules, 1858, and no order was made in it except for continuance till the March term, 1881, when it was ordered to be stricken from the docket on March 18, 1881, under the law, which provides, that a case, in which no order but for continuance has been made, may be stricken from the docket. But this order was set aside on the motion of the plaintiff on the next day, and the cause was re-instated on the docket. All the depositions in this cause were taken in 1855.

Thomas Proudfoot in his deposition proves all the substantial facts stated in the bill not proven by exhibits filed with the bill; and he proves, that John Vanscoy bought the fifty-eight acres of land of Stinchcomb not more than two or three months after Stinchcomb got it by exchange. No deeds were ever made by McClaskey or Stinchcomb to carry out their exchange of land. The trade of lands, he thinks, was made in 1850, but it might have been in 1851. He does not say,

whether there was any contract in writing, whereby this exchange was effected, or whether it was merely by parol contract. He closes his deposition by saying :—"The above information I received from Stinchcomb and Vanscoy, and of a part of it I had knowledge myself."—Exceptions were endorsed on this deposition by Hall and Bennett, because it detailed information obtained from McClaskey and defendant Stinchcomb, and because he was an interested witness. filing a certain bond to prove it. When this exception was entered, in no way appears, it being without date.

McClaskey testified in his deposition, that the contract for the exchange of land between him and Stinchcomb was made in the latter part of 1849 or early in 1850. He states the contract of exchange substantially as stated in the bill. He says nothing about its rescission. It was never carried out, he says, no deeds having been made, Stinchcomb having no title to the land in Ritchie county. He understood from Stinchcomb, that he set up no claim to the fifty-eight acres in Barbour, because he could make no deed of the one hundred and fifty acres in Ritchie, having no legal or equitable title to it. He says, he learned from both Vanscoy and Stinchcomb, that about March 15, 1850, they made a contract for this fifty-eight acres of land ; and he thinks, Vanscoy paid Stinchcomb about $175.00. Stinchcomb having no deed to this land could not make a deed to Vanscoy.—He did not know how much of the purchase-money was to be paid in deferred payments. Hall and Bennett endorsed at some time, there being no date to the endorsement, exceptions to the reading of this deposition : 1st—because the witness was interested ; 2d—because he speaks of the contract and title of this land, when they are both in writing; 3d—because the conversations of Stinchcomb and of Vanscoy are not evidence against them.

Two other witnesses were examined to prove, that Stinchcomb never had any title to the one hundred and fifty acres in Ritchie. They prove clearly, that he had no title to a considerable part of it; but he had brought a suit for it. One of the witnesses says, the suit has been pending for from four to six years. His deposition was taken October 5, 1855. There was endorsed on one of these depositions by

Bennett, without date, exceptions, because of want of notice of its being taken, and because he could not speak of Stinchcomb's title, as he did not produce any title-papers.

The following final decree was entered on the 23d day of October, 1883 :

" This cause came on this day to be finally heard upon the bill of the plaintiff, process executed on all the defendants, proceedings at rules regularly had and matured, separate answers of defendants, Bennett and Hall, general replication thereto, bill taken for confessed against defendant Stinchcomb, former orders and decrees herein, depositions, exhibits, the new injunction bond heretofore required, given and filed herein, and upon the motion to dissolve the injunction granted herein, and was argued by counsel. And it appearing to the Court from the pleadings and proofs that the cause is for the plaintiff, it is adjudged, ordered and decreed that the said injunction be and the same is hereby made perpetual, and the defendants, and each of them, perpetually enjoined from collecting the debts, or any of them, in the bill and proceedings mentioned, and that the plaintiff recover of the defendants his costs by him herein expended. "

Execution issued for these costs and was duly levied, and a forthcoming bond was given and forfeited, and a judgment on the bond was entered on the 2d day of March, 1885, against J. M. Bennett and Louis Bennett, his security, for $67.14, with interest from October 1st, 1884; and execution was issued on this judgment. After the judgment was rendered, on May 5th, 1885, an appeal and supersedeas was awarded on petition of J. M. Bennett by a judge of this Court to the decree of October 23, 1883; and on July 23, 1885, on the petition of the said Bennett a *supersedeas* was awarded to the judgment on the forthcoming bond.

*J. M. Bennett* for appellant.

*J. Hop. Woods* for appellee.

GREEN, JUDGE :

The counsel for the appellees asks, that the *supersedeas* granted to the judgment on the forthcoming bond may be

quashed as improvidently awarded, insisting, that the judgment on the forthcoming bond is an original record, a proceeding at law and not in equity, as the previous proceedings were, out of which the proceedings on the forthcoming bond had arisen; and that the proceedings on the forthcoming bond were the equivalent to an action of debt upon it, and, as the recovery was only $67.14, this Court has no jurisdiction to supervise, our jurisdiction being limited in such actions to those cases, where the matter in controversy exclusive of costs is of greater value or amount than one hundred dollars. It is admitted, that we have jurisdiction to review the decree in the chancery cause appealed from, which refused to dissolve the injunction theretofore awarded to two judgments theretofore rendered (chap. 135, sec. 1, Warth's Am. Code 744–5).

This Court as well as the Court of Appeals of Virginia holds, that a judgment on a forthcoming bond and a decree or previous judgment, on which the execution issued, on which the forthcoming bond was given, constitute but one proceeding, so far as the *supersedeas* is concerned. On this subject I said in *Laidley* v. *Bright,* 17 W. Va. 788–9 :—"The defendants in error by their counsel insist, that the writ of error in this case should be dismissed, because it is 'a writ of error and *supersedeas* to two separate judgments rendered in separate and distinct causes. There is nothing in this position. The judgment on a forthcoming bond is not considered as brought up by a *supersedeas* to the first judgment (see *Mors et al.* v. *Mors's Admr.,* 4 H. & M. 303); but the two judgments constitute one proceeding, so far as granting a *supersedeas* is concerned; and if the judgment on the forthcoming bond has been rendered before the *supersedeas* is issued, and the error exists in the first judgment, the petition ought to pray a *supersedeas* to both judgments, and they should be both embraced in the *supersedeas.* (*Monroe* v. *Webb's Ex'rs,* 4 Munf. 73; *McCormick* v. *Webb,* 17 W. Va. 594.) So far have the courts gone in holding, that it is proper for the appellate courts to try the whole matter in one case, that an appellate court may extend the *supersedeas* first awarded to the judgment subsequently obtained on the forthcoming bond (See *Bell* v. *Bogg,* 4 Munf. 260.) We

must therefore consider this case on its merits."—Upon these views this Court acted in that case; and upon them this Court and the Court of Appeals of Virginia has always acted.

In this case the appellant with his first petition to this Court should have presented not only the record of the chancery cause but also the record of the proceedings, in which the judgment was rendered on the forthcoming bond; and this Court would have awarded him an appeal to the chancery decree and a *supersedeas* to both the decree and the judgment on the forthcoming bond. But having failed to present the record of the judgment on the forthcoming bond, as he should have done, he was, after the appeal and *supersedeas* were allowed, very properly allowed to present the record of the proceedings on the judgment on the forthcoming bond, and a *supersedeas* was properly allowed him, though the amount of the judgment was less than one hundred dollars; for, as we have seen, it was an appendage to the record of the decree and constituted one proceeding with it, and it is admitted, we had under our statute properly taken jurisdiction of the chancery cause to review the decree.

The appellant's counsel also insists, that no case has been made out by the plaintiff below, because he excepted to each and all of the depositions taken by the plaintiff for different reasons; and when these exceptions are considered by this Court, it will be found, that not one of the depositions can be read. So that the case really stands before this Court on the bill and answers; and as the answers deny all the material allegations of the bill, it follows of course, that the injunction should have been dissolved and the bill dismissed.

If it were true, as claimed, that the objections to the reading of the depositions were valid, they have all been waived by the appellant except those objections, if there be any, based on the incompetency of the witness in the court below to testify as to certain matters testified to by him. The exceptions taken to these depositions noticed in the statement of this case were, so far as the record shows, never called to the attention of the court below nor noticed by any decree rendered by the court; and with the exception of those based on the incompetency of the witness to testify to

the matter objected to all these exceptions of the appellant must in this Court be considered as having been waived by the appellant and the other defendants in the court below and can not now be raised or relied on in this Court. This is the well settled law both in Virginia and in this State (*Fant* v. *Miller*, 17 Gratt. 187 ; *Hill* v. *Proctor*, 10 W. Va. 78). The law as laid down and followed both in Virginia and West Virginia is as follows :—"An exception to a deposition, whether endorsed on it or taken and entered on its face in the process of taking it or written on a separate paper and filed in the cause (except upon the ground of incompetency, in which case no exception is necessary) not having been brought to the notice of the court below or passed upon by the court ought to be considered as having been waived and can not be noticed by the appellate court. And a general judgment or decree of the court below against the party making the objection can not be considered as invoking a decision upon the exceptions."

In this case there is really no proper evidence, that any exceptions were ever filed to any of the depositions. The record contains nowhere any reference to any such exceptions as filed and nothing to indicate, that they were ever filed, except the fact, that the clerk in making out the record copies these various exceptions as endorsed on the different depositions. None of these exceptions have any date to them; and all of them may have been endorsed on these depositions, since the court finally decided the cause. But, as we have seen, it would have made no difference, if they had been taken and inserted in the body of the depositions, when the depositions were taken. If the record fails to show, that the attention of the court was called to the exception, or unless the court below acted upon it, the appellate court will consider the cause, as though such exception had never been filed.

The depositions of Proudfoot and McClasky are objected to, because the witnesses are incompetent to testify, each of them being interested in the event of the suit. I can not see, that McClasky is interested ; but Proudfoot is, being a security in one of the forthcoming bonds. But this makes no sort of difference ; for, though he was directly interested and

for that reason incompetent to testify in 1855, when his deposition was taken, his deposition could be read and considered, when the case was heard and decided on the 22d of October, 1883, he being at that time competent to testify by our then existing statute-law. (*Parker* v. *Clarkson*, 4 W. Va. 408, pt. 2 of Syll.; *Zane* v. *Fink*, 18 W. Va. 693.) The depositions therefore of Proudfoot and McClaskey as well as all the other depositions taken in this cause may properly be read and considered by the Court. They satisfactorily prove the case of the plaintiff below, as stated in his bill. But Proudfoot at the close of his deposition says, that he received the above statements from Stinchcomb and Vanscoy and a part of then he had personal knowledge of. As we can not distinguish what portion of his statements he had personal knowledge of and what portion he learned from Stinchcomb and Vanscoy, and more especially as we can not tell, when he received this information from these parties, and as the weight and even the competency of the evidence might depend on the time, when he received the information from these parties, we will on that account disregard what he says.

But, it seems to me, the decree of the court below, so far as it perpetuates the injunction to these judgments against Vanscoy is concerned, was justified by the deposition of McClasky, who had no interest in or care for the decision of this cause. His evidence is, that he made a contract for the exchange of lands with Stinchcomb conditionally about the 1st of January, 1850. He says:—"I was to make a deed for the land in Barbour, when he cleared off the incumbrances from his land in Ritchie and made me a general warranty deed for it. The contract is not in force and was rescinded about eighteen months or two years after it was made. * * * * I learned from Stinchcomb, that he could not clear it of the incumbrance upon it, at the time and subsequently, that he had no deed for it, and I never did learn, that he had any legal title to said land whatever. It was my understanding with Stinchcomb, that he had no claim on my land in Barbour belonging to me and could not have, until he cleared all the encumbrances on his land in Ritchie and made me a general warranty deed for the same. No deeds were ever

made."—This being all the evidence in the record, by which Stinchcomb could claim any title legal or equitable to the fifty-eight acres of land in Barbour county, and it appearing by fair inference from this, that he never had any possession of this land, and it not appearing, that the conditional contract, of which the witness speaks, was ever reduced to writing, it follows necessarily without regard to the title, which Stinchcomb had to the one hundred and fifty acres of land in Ritchie county, that he had no title or claim legal or equitable to this fifty-eight acres in Barbour. He seems to have had nothing but a verbal contract with McClaskey, that McClasky would make him a deed for the fifty-eight acres, whenever he should make to McClasky a deed with general warranty for the one hundred and fifty acres, which he claimed to own in Ritchie county, and should free that tract from all incumbrances. This verbal contract was void by the statute of frauds; and the purchaser under it never having been put in possession, a court of equity, as universally admitted, will not enforce it. It is void and inoperative both at law and in equity.

Yet having no other claim to this land Stinchcomb sold it to Vanscoy and assigned the purchase-money-bonds given to him by Vanscoy to Bennett and Hall, it is to be presumed, for a valuable consideration; and they recovered judgment on the notes, the collection of which Vanscoy enjoined; and the decree appealed from in this case perpetuates the injunction. Of course the awarding of such injunction and the perpetuating of it was perfectly right, if the consideration of these two bonds wholly failed, and on the evidence of McClasky it appears, that the consideration did wholly fail, as Stinchcomb at no time ever had any title legal or equitable or any claim of any kind to this land which was the consideration for the bonds. If we were to assume, that the contract for the exchange of lands between McClasky and Stinchcomb was in writing, it would not really better the appellant's case; for it was not such a contract, as under the circumstances proven in this case, a court of equity will specifically enforce. It satisfactorily appears from the evidence, that, when Stinchcomb entered into this contract to exchange lands with McClasky, he was and, so

35

far as the record shows, has ever since been unable to perform the condition, upon which alone he was entitled to the land belonging to McClasky. This being the case a court of equity will not compel McClasky to convey the land to Stinchcomb; and having no title legal or equitable to this land at any time he is not entitled, nor are his assigns entitled, to enforce judgments, which they have recovered on the bonds of a purchaser from Stinchcomb.

It is universally admitted to be law, that, if the plaintiff in a suit brought to enforce specifically a contract fails to show, that he has performed or been ready and willing to perform all the essential terms of the contract on his part, and also that he is ready and willing to do all matters and things on his part thereafter to be done, he can not obtain a decree requiring the defendant to perform his part of the contract. (Fry on Spec. Perf., chap. 9, sec. 608 and authorities cited). Now it is satisfactorily shown, that Stinchcomb was not, when he made this contract with McClasky, and never has been since able to convey by a valid deed free from encumbrance the one hundred and fifty acres of land in Ritchie county; and unless he could do so, he never had any claim on McClasky for the fifty-eight acres in Barbour county, and never could with the aid of a court of equity acquire title to it. William Collins in his deposition proves that the land in Ritchie county has been in the adversary possession of others for many years, and that Stinchcomb never had been in possession of it. Marsh proves, that a considerable portion of said land has been in the adversary possession of others for twenty-five or thirty years, and that he himself claims more than a hundred acres of it adversely to Stinchcomb and is the owner and has exercised acts of ownership over the same since 1835, and has had a legal title to it since 1839 or 1840. Stinchcomb never had possession of any of it. On cross-examination this witness proved, that he knew, that Stinchcomb claimed the portion of this tract of land, which he had patented, and believed he had a suit pending then, 1885, for the balance of the land, and that this suit had been pending from four to six years.

This evidence, it seems to me, sufficiently shows, that in 1885 Stinchcomb, though he had never cancelled his con-

tract with McClasky, could not perform the essential terms of it on his part and therefore had no title, even had the contract been in writing, to have it specifically enforced, and that he had no right to sell the land to Vanscoy or to enforce the payment of the purchase-money-bonds given by Vanscoy, nor had his assignees, Bennett and Hall, any such right. They had in such case only the right of their assignor. This has been the law in Virginia and in this State ever since the decision in *Norton* v. *Ross*, 2 Wash. 233.

The court therefore did not err in perpetuating the injunction to prevent the enforcement of the judgments upon the assignees against Vanscoy—But the court did commit one error in the decree appealed from to the prejudice of the appellant Bennett as well as to the prejudice of his co-defendant Hall. The plaintiff in making out his claim had to show, that the defendants, Bennett and Hall, were assignees for value of the purchase-money-bonds given by him to Stinchcomb, the assignor; and, when the court perpetually enjoined the collection of these bonds, it should have given a decree in favor of these defendants severally for the amount due to each of them, which was the face of these bonds with interest, it being presumed in the absence of all proof, that they paid Stinchcomb the face value of the bonds. This seems to be a proper case for a decree between co-defendants, which should be entered, only when it is based on the pleadings and proofs between the plaintiff and defendants. (*Burlew* v. *Quarrier*, 16 W. Va. 108 ; *Worthington* v. *Staunton*, — Id. 208.) When as in this case the plaintiff in in his bill alleges and in his proofs shows clearly a state of facts, upon which one defendant has a clear right to a decree against another defendant, it is proper to render a decree in accordance with such right and not turn him over to another suit against such defendant, in which he would recover on the same evidence.

The decree of October 22, 1883, must be affirmed ; but this Court must render such further decree between the co-defendants, as the court below ought to have rendered ; and a decree must be entered for J. M. Bennett against Thomas Stinchcomb for the sum of $267.25 with interest thereon from October 22, 1883, and a decree in favor of William Hall

against Thomas Stinchcomb for $244.40 with interest from October 22, 1883, till paid; and the appellant must recover of Thomas Stinchcomb his costs in this Court expended; and the *supersedeas* to the judgment on the forthcoming bond must be set aside and held for naught. .

AFFIRMED.