GOWER *v.* STRAIN.

(Division A. Jan. 9, 1933.)

[145 So. 244. No. 30339.]

Thos. **L. Bailey** and **Aubert C. Dunn,** both of Meridian, for appellant.

346

**Dunn & Snow,** of Meridian, for appellee.

348

 

Argued orally by **Aubert C. Dunn** and **Thomas L. Bailey**, for appellant, and by **E. L. Snow**, for appellee.

**Cook, J.**, delivered the opinion of the court.

The appellant instituted this suit in the circuit court of Lauderdale county against Dr. T. A. Strain, seeking to recover damages for personal injuries sustained by her as a result of the alleged negligent operation of an automobile in which she was riding as a guest. The appellee was called by the appellant as an adverse witness, and was fully cross-examined by his own counsel, and, at the conclusion of the testimony offered by the appellant, the court peremptorily instructed the jury to return a verdict for the appellee, and, from a verdict and judgment entered in pursuance of this instruction, this appeal was prosecuted.

The appellant was a niece of the appellee, and frequently visited in his home. On Saturday night preceding Sunday, August 30, 1931, she was a guest in the appellee's home, and, when he returned to his home about ten-thirty p. m., he informed his wife and daughter and the appellant that he expected to drive to Columbus, Mississippi, upon the following day. They all expressed a desire to accompany him, and he thereupon invited them to make the trip with him. They retired about twelve o'clock with the understanding that they would start on this journey about four a. m. the following morning; and at four a. m. on this Sunday morning they were on the United States highway No. 45 leading from Meridian to Columbus, Mississippi. They were traveling in the appellee's Master Six Buick coupe, the appellant and the appellee's wife sitting on the rumble seat at the rear, while the appellee, as driver and operator of the automobile, and his ten

year old daughter were on the front seat. They proceeded on the journey without any untoward incident until they reached a point about fifteen miles from Columbus, when the car crossed from the righthand side of the highway to the left, and turned over down an embankment on the left side thereof, and seriously injured the appellant. The automobile left the highway a short distance after it passed over a small concrete bridge in a curve, and from the bridge to the point of the accident there was some loose gravel and the highway was somewhat corrugated.

The appellee testified that, for some distance before he reached the point where the automobile left the road, he had been drowsy from loss of sleep, and had several times lowered the window at his left in order to get some fresh air in an effort to overcome this drowsiness and keep awake; that he saw the bridge in the curve before he reached it, but was not entirely conscious of what happened after he crossed this bridge until he found his car being precipitated down the embankment; that he was asleep, but did not consciously permit himself to go to sleep; and that on other occasions he had gone to sleep while driving his automobile and had managed to hold the road. At another place in his testimony he stated: "I did not consciously permit myself to go to sleep, but I went to sleep. Something happened out there. I don't know what happened. I don't remember what happened." In reply to questions as to why he kept on driving without notifying the occupants of the automobile of his sleepy condition, he testified as follows: "I figured that I had been in this condition several times, a number of times, especially when I would lose sleep on account of being out at night, and I figured that maybe with a nod or two on the way I would brighten up and go right on. I did not feel that it was necessary to notify them. I felt that I could go on over."

In support of the action of the court below in granting a peremptory instruction to the jury to find for the appellee, it is first contended that this instruction was properly granted, for the reason that there was a fatal variance between the allegations in the declaration as to the negligence causing the injury and the proof offered in support thereof.

There is in the declaration no specific charge that the appellee was negligent in driving the automobile while incapacitated to safely drive it on account of drowsiness or sleepiness resulting from fatigue or loss of sleep. It is charged, in general language, that the appellee operated the automobile in a careless and negligent manner over a rough, graveled highway, containing ridges and elevations, which required the exercise of care and prudence in operating an automobile thereon; that he operated his automobile over such highway in a careless and negligent manner, and, while so doing, struck an elevation or a ridge therein, and lost control of his automobile on account of the careless and negligent manner in which he was operating it, and, as a consequence, it left the road and was precipitated down a high embankment, and that this might have been avoided by a proper application of the brakes, after it veered to the left-hand side of the highway, but the appellee wholly failed and neglected to apply the brakes.

It will not be necessary to decide whether or not there is, in fact, any variance between the allegations of negligence in the declaration and the proof offered to establish it, for, if it be conceded that there was variance, the appellee is not in a position to avail of it here, for two reasons: The evidence offered by the appellant to show negligence on the part of the appellee in continuing to drive his automobile after he realized his faculties were being overcome by drowsiness or sleepness was admitted, without objection. In fact, much of this testimony on

this point was developed in the cross-examination of the appellee by his own counsel. It has been repeatedly held that a variance between the cause of action stated, and that sought to be proved, can only be availed of by objection to the testimony on that ground when it is offered. Kimbrough v. Ragsdale, 69 Miss. 674, 13 So. 830; Illinois Cent. R. R. Co. v. Cathey, 70 Miss. 332, 12 So. 253; Yazoo & M. V. R. R. Co. v. Schraag, 84 Miss. 125, 36 So. 193; and True-Hixon Lumber Co. v. McDonough, 154 Miss. 720, 123 So. 855. And it has likewise been held that it cannot be raised by an instruction which does not admonish the court or the opposing party thereof. Greer v. Bush, 57 Miss. 575. Consequently, the appellee's request for a peremptory instruction was insufficient to raise it.

In order for a party to avail himself of a variance between the pleadings and the proof, the variance must be material, and it is provided by section 568, Code 1930, that such variance "shall not be deemed material, unless it shall have actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits." The entire course of the trial of this cause in the court below revolved around the one issue of whether or not, under all the circumstances surrounding him at the time, the appellee was guilty of negligence in continuing to drive the automobile after he realized he was in danger of being overcome by drowsiness and losing consciousness in sleep. The evidence showing the appellee's state of drowsiness and exhaustion, and his ultimate lapse into sleep, which was admitted without objection, was developed by an examination of the appellee as an adverse witness, and particularly by the cross-examination of him by his own counsel, and he could not have been misled to his prejudice, in maintaining his defense, by the introduction of this evidence.

The appellee next contends that the peremptory instruction was properly granted for the reason that the proof does not show actionable negligence. While the

appellee testified that he did not, on the occasion in question, consciously permit himself to go to sleep, he admitted that he realized he was drowsy and on the point of lapsing into the unconsciousness of sleep; that he several times lowered the window of his car to secure fresh air, a means which he realized was not always effective in overcoming sleep. In fact, he practically admitted that he consciously permitted himself to go to sleep, or, at least, that he did not make proper effort to avoid it, by testifying that, from experience, he found he could get "some pretty good sleep at the wheel" and stay on the road, and that "I figured that maybe with a nod or two on the way, I would brighten up and go right on."

Upon these facts, is there a proper basis for an inference of negligence on the part of the appellee in continuing to drive the automobile while in such a state of drowsiness as to warn him of the near approach of the unconsciousness of sleep? Ordinarily, sleep does not come unheralded, and, in fact, it did not do so on the occasion in question. There are few agencies more fraught with danger to life and property than an automobile proceeding at a high rate of speed along a highway covered with loose gravel, without the direction of a conscious mind; and the fact that one continues to drive an automobile at a high rate of speed after he recognizes and appreciates signals of the near approach of sleep furnishes a proper basis from which an inference of negligence may be drawn.

In a forceful and well-reasoned opinion in the case of Bushnell v. Bushnell, 103 Conn. 583, 131 A. 432, 435, 44 A. L. R. 785, the Supreme Court of Connecticut expressed this view, in language which we quote to approve, as follows: "Sleep in such a situation does not ordinarily come upon one unawares, and, by watching for indications of its approach or heeding circumstances which are likely to bring it about, one may either ward it off or

cease an activity capable of danger to himself or to others. There are few ordinary agencies so fraught with danger to life and property as an automobile proceeding upon the highway freed of the direction of a conscious mind, and, because this is so, reasonable care to avoid such a danger requires very great care. . . . In any ordinary case, one cannot go to sleep while driving an automobile without having relaxed the vigilance which the law requires, without having been negligent. It lies within his own control to keep awake or cease from driving. And so the mere fact of his going to sleep while driving is a proper basis for an inference of negligence sufficient to make out a prima facie case, and sufficient for a recovery, if no circumstances tending to excuse or justify his conduct are proven. . . . If such circumstances are claimed to have been proven, it then becomes a question of fact whether or not the driver was negligent; and, in determining that issue, all the relevant circumstances are to be considered, including the fact that ordinarily sleep does not come upon one without warning of its approach.''

The appellee next contends that the peremptory instruction was properly granted, for the reason that, when the appellant accepted his invitation and became his guest on the journey, she assumed the risk incident to his loss of sleep and consequent drowsiness while driving. In support of this view, he relies upon the case of Chapman v. Powers, 150 Miss. 687, 116 So. 609, wherein it was held that, if it is manifest to the guest that the host, from drunkenness, or other cause, is unfit to drive the car, and that his driving will endanger the life and limb of others, and the guest is fully aware of that condition of affairs, and voluntarily rides in the car with such a host, the negligence of the host becomes the negligence of the guest. This principle has no application to the facts in evidence in the case at bar. It is argued that, since the evidence shows that the appellant was an in-

telligent, educated young woman, who knew the usual amount of sleep required to sustain an average normal person, and that she knew the appellee had only about three and one-half hours of sleep the night before, she assumed the risk of his condition as to drowsiness and fatigue when she elected to make the trip under the known circumstances.

It is a matter of common knowledge that the amount of sleep ordinarily required by different people varies largely, and that, when the occasion requires, people pursue their daily vocations and discharge responsible duties after loss of sleep, without apparent impairment of their faculties. In the fact that a physician, who was accustomed to being disturbed and making visits at all hours of the night, had secured only three and one-half hours of sleep the preceding night, there was nothing to charge the appellant with knowledge or notice of probable dangers resulting from the negligent driving of the automobile by him while in a state of drowsiness or sleep. The appellee was riding in the rumble seat of the automobile, without means of communication with the driver on account of an intervening window. Prior to the time of the accident, nothing had occurred on the trip to indicate that the driver was not alert and in full, conscious possession of all of his faculties. The appellee owed the appellant the duty of exercising reasonable care not to increase her danger, or create new dangers, and to avoid injury to her, and she did not assume the risk of injury resulting from the negligence, if any, of the appellee in continuing to drive the automobile after he realized he was on the point of losing the conscious possession of his faculties, a condition about which the appellant had no knowledge or notice, and no means of acquiring such knowledge or notice.

The appellant contends that, upon the question of liability the peremptory instruction requested by her should have been granted, but we think the determination of the

question of whether or not, upon all the facts in evidence, the appellee was negligent, should have been submitted to the jury.

In accordance with the views herein expressed, the judgment of the court below will be reversed and the cause remanded.

Reversed and remanded.