Thomas Korzun, *an Infant, etc., and*
Jack Korzun, *as* Father, *etc., of*
Thomas Korzun

*v.*

David Shahan, *an Infant, and* Virgie Shahan

(No. 12563)

Submitted September 27, 1966. Decided November 29, 1966.

244

*Oakley J. Hopkins,* for appellants.

*Clark B. Frame,* for appellees.

CAPLAN, PRESIDENT:

In this civil action, instituted in the Circuit Court of Monongalia County, the plaintiffs, Thomas Korzun, an infant who sues by his next friend, Jack Korzun, and Jack Korzun as the father and natural guardian of Thomas Korzun, seek to recover damages for personal injuries and medical expenses from the defendants, David Shahan, an infant, and Virgie Shahan, his mother. It is alleged in the complaint that the injuries were received and the medical expenses incurred by

reason of the negligent and careless operation of an automobile by defendant David Shahan.

It appears from the record that the defendant, Virgie Shahan, was the owner of a 1964 Ford automobile which, with her permission, on the night of July 24, 1964, was being driven by David Shahan, then sixteen years of age. Plaintiff Thomas Korzun, an infant fourteen years of age, and Larry Duley, age seventeen, were passengers in the Shahan vehicle on that occasion. The three boys occupied the front seat of the automobile, Thomas Korzun being seated in the middle. David Shahan, with his passengers, drove around the city of Morgantown for several hours, after which he drove out on State Route No. 119 toward the city of Grafton. Upon driving approximately ten miles he turned the automobile around and started back toward Morgantown. It was during this return trip, while traveling at an excessive rate of speed, that defendant Shahan lost control of his car, causing it to crash violently into a ravine, thereby severely injuring the plaintiff, Thomas Korzun.

According to the testimony of plaintiff Thomas Korzun, the drive toward Grafton on State Route No. 119 was uneventful, the defendant then operating his automobile at a speed of from fifty-five to sixty miles per hour. However, when the defendant turned his vehicle around and started back to Morgantown the situation changed. The plaintiff testified that the defendant, while proceeding down a long grade, began to drive at an excessive speed. Referring to the defendant, plaintiff related, ''he wanted to see if he could hit the peg, but he didn't want to break it''. He said that the defendant used those words. Translated to understandable English, this means that the defendant wanted to see how fast the car would travel. Testifying further, the plaintiff said that when the car was traveling between eighty and ninety miles per hour, ''I told him to slow down the car; that he

was going to tear his mother's car up. I thought maybe that would scare him, but it never".

Thomas Korzun then related the manner in which the collision occurred. He said that the defendant drove around a curve too fast and went off onto the righthand berm of the road; that the car "fishtailed", meaning that "It was weaving back and forth in the back end"; that it traveled approximately one hundred fifty yards down the highway in that manner and finally went off the lefthand side of the road, over the bank into the air and crashed into a ravine. The plaintiff was thrown through the windshield of the defendant's car, landing approximately ninety feet away.

Herbert Richardson, a member of the Department of Public Safety, testified that when he arrived at the scene of the accident he observed the wrecked vehicle in the underbrush of the ravine, David Shahan lying on the ground at the left rear of the car and Thomas Korzun lying near the highway on the berm of the road. The following questions and answers appear in the record: "Q. Trooper, were you able, from the physical evidence and facts surrounding the accident, to determine the pattern of the automobile as it collided and went through the air? * * * A. It appeared that the vehicle had run off the road near the Coffee Shop going toward Morgantown upon the righthand side of the bank and down off the bank across the highway, across the driveway, and rolled over twice and came to position in the ravine. * * * Q. What speed did it appear to have been going? A. Anywhere between 100 and 110 miles per hour."

Trooper Richardson further testified that he preferred charges against defendant David Shahan, charging him with "Reckless driving, with willful and wanton disregard for the safety of others". The defendant later went to the office of the justice of the peace where the complaint was filed, entered a plea of guilty and paid the fine and costs.

The testimony of Larry Duley, the other passenger in the Shahan automobile, reveals that during the drive from Morgantown on State Route No. 119, David Shahan did not advise either of his passengers that he was going to attempt to determine how fast the vehicle would go. This witness first learned that the defendant was going to attempt this speed after he turned his car around and "was proceeding down the mountain". The following testimony appears: "Q. In conclusion, there was no conversation whatever about driving that car as fast as it would go, or trying to hit the peg, or anything else prior to the time that David Shahan started down that mountain? A. No, sir."

The testimony of David Shahan varies from that of the plaintiff and other witness, but it is readily discernible that he drove his automobile at speeds greatly in excess of the legal limits immediately prior to its violent encounter with the surrounding countryside and ravine where it finally came to rest. He related that on the drive from Morgantown he attained speeds of seventy-five to eighty miles per hour; that Thomas Korzun registered no complaint about the speed of the vehicle; that when he stopped to turn around the plaintiff made no effort to get out of the car; and, that though he admitted driving at an excessive rate of speed on the return trip, the plaintiff did not express any fear or displeasure in relation to the operation of the automobile.

On cross-examination this defendant stated that he at no time advised his passengers that he was going to test the speed of his vehicle. He said that he did not think he was driving in excess of one hundred miles per hour on the return trip, although he admitted he did not look at his speedometer. His estimation of his speed at that time was eighty miles per hour. Recounting the manner in which the collision occurred, David Shanhan testified that, as he was driving down the highway, a car was "coming at me with the bright

lights''. He inferred that the car forced him off the road, although he admits that it did not collide with him. After he drove off the right side of the road he does not remember what happened, thereby neither admitting nor disputing certain evidence related by Trooper Richardson and other witnesses. In relation to the charges filed against him by Trooper Richardson, the defendant readily admitted that he entered a plea of guilty and paid a fine and costs.

As a result of this unfortunate occurrence, Thomas Korzun received serious injuries and was hospitalized for five days. Doctor Maynard Pride, the plaintiff's attending physician, testified to the plaintiff's injuries, his treatment and the reasonableness of the medical and hospital bills. The medical evidence also includes the testimony of Doctor Justus C. Pickett, an orthopedic surgeon, to whom Thomas Korzun was referred for examination and treatment. In the opinion of Doctor Pickett, the injury suffered by the plaintiff will result in some permanent restriction in the movement of his back.

Upon these facts, as developed during the trial, the case was submitted to the jury. The jury returned a verdict in favor of the plaintiffs, assessing Thomas Korzun's damages at $6,000.00 and awarding Jack Korzun the sum of $2,700.00, upon which verdict the court entered judgment.

On this appeal it is the contention of the defendants that the trial court erred in (1) failing to find that plaintiff Thomas Korzun was guilty of contributory negligence as a matter of law; (2) failing to preclude recovery on the theory of assumption of risk; (3) refusing defendants' instruction on the theory of sudden emergency; (4) giving certain instructions offered by the plaintiffs; (5) permitting the introduction into evidence of the exact words of the charge preferred against defendant David Shahan; (6) submitting the case to the jury on the plaintiffs' instruction based

on wilful and wanton negligence when there were no allegations thereof in the complaint; and (7), failing to find that the verdict was excessive.

In order to find a guest passenger, who was injured as the result of the driver's negligence, guilty of contributory negligence as a matter of law the evidence of his negligence or his failure to exercise due care for his own safety must be of such magnitude that no doubt on this matter exists to be submitted to a jury. *Young v. Wheby,* 126 W. Va. 741, 30 S. E. 2d 6. In the absence of such overwhelming evidence the question of contributory negligence is for jury determination. This Court has held in numerous decisions that an injured guest passenger was precluded from recovering damages by reason of his being contributorily negligent as a matter of law. *Hutchinson v. Mitchell,* 143 W. Va. 280, 101 S. E. 2d 73; *Hurt v. Gwinn,* 142 W. Va. 259, 95 S. E. 2d 248; *Adams v. Hutchinson,* 113 W. Va. 217, 167 S. E. 135. In each of those cases, however, the guest passenger became a co-adventurer with the driver, in no way protested the dangerous manner in which the vehicle was being operated, and, though he had numerous opportunities to leave, chose to remain in the automobile where he knew or had reason to believe that his safety was in jeopardy.

No such overwhelming evidence appears in the case at bar. To the contrary, though disputed in some instances, there is evidence that the defendant driver, throughout the evening and until immediately prior to the crash, had operated his vehicle in a safe manner; that upon the only opportunity afforded the plaintiff to alight from the car he was totally unaware of any impending danger; and that when the defendant began driving down the mountain at highly excessive speeds the plaintiff protested and attempted to persuade him to drive more slowly.

In the circumstances of the instant case, as revealed by the evidence, we cannot say, as a matter of law, that the plaintiff, Thomas Korzun, was guilty of contribu-

tory negligence. In an action to recover damages for personal injuries, such as we have here, the questions of negligence and contributory negligence are for the jury when the evidence is conflicting or when the facts, though undisputed, are such that reasonable men may draw different conclusions from them. *Sydenstricker v. Vannoy*, 151 W. Va. 150 S. E. 2d 905; *Kendall v. Allen*, 148 W. Va. 666, 137 S. E. 2d 250; *Evans v. Farmer*, 148 W. Va. 142, 133 S. E. 2d 710; *Metro v. Smith*, 146 W. Va. 983, 124 S. E. 2d 460; *Lewis v. Mosorjak*, 143 W. Va. 648, 104 S. E. 2d 294. Therefore, the court properly submitted the question of contributory negligence to the jury.

The defendants contend that the court erred in failing to negative assumption of risk in its instruction to the jury. Although in certain circumstances there is a distinction between the defense of assumption of risk and the defense of contributory negligence, that distinction does not exist under the facts of the instant case. Assumption of risk is available as a defense only where one places himself in a posture of known danger with an appreciation of such danger. See 38 Am. Jur., Negligence, § 171 et seq. It involves the taking of a risk without regard to the care taken after he is in danger. In the instant case it was not a risk *per se* for the plaintiff to have ridden in an automobile with the defendant. Therefore, it was not necessary to negative assumption of risk in the circumstances of this case. At any rate, the negativing of contributory negligence in certain instructions is the equivalent of that here sought by the defendants.

Defendants' Instruction No. 4, which was refused, invoked a defense under the doctrine of sudden emergency. Such refusal is assigned as error. In numerous decisions this Court has adhered to the proposition succinctly stated in the tenth point of the syllabus of *Crum v. Ward*, 146 W. Va. 421, 122 S. E. 2d 18, which reads as follows: ''In an action for damages for personal injuries, a defendant can not rely on the sudden

emergency doctrine where his own action has created, in whole or in part, the sudden emergency.'' See also *Henthorn v. Long,* 146 W. Va. 636, 122 S. E. 2d 186; *Reilley v. Byard,* 146 W. Va. 292, 119 S. E. 2d 650; and 65 C.J.S., Negligence, § 17e.

In the case under consideration the defendants' evidence clearly reveals that any sudden emergency with which he was confronted was created in whole or in part by his own actions. Therefore, the doctrine of sudden emergency is not available as a defense and the trial court properly refused such instruction.

It is urged by the defendants that the court erred in giving certain instructions offered by the plaintiffs. The only objection noted to the giving of plaintiffs' Instructions Numbers One, Three and Eight is that each ignores the defense of assumption of risk. Inasmuch as we have determined that assumption of risk was not available as a defense in the circumstances of this case, and since the question of contributory negligence was considered, it was not error for the court to have given such instructions.

Instruction Number Four, offered by the plaintiffs, refers to the injured plaintiff as an infant of tender years and advises the jury that his conduct ''is not, of necessity, to be judged by the same rules which govern that of an adult''. The defendants objected to the giving of that instruction, noting that the plaintiff is ''of the age of understanding''. A similar instruction given by the court in *Jones v. Ambrose,* 128 W. Va. 715, 38 S. E. 2d 263, was approved by this Court on appeal. Furthermore, the question whether the plaintiff's conduct constituted contributory negligence on his part was before the jury for its consideration. In view of the evidence adduced at the trial, we perceive no manner in which this instruction could result in prejudice to the defendants.

Instruction Number Six, offered by the plaintiffs and given by the court, instructed the jury that if it

believed from the evidence that on the occasion of and immediately prior to the accident David Shahan was guilty of wilful and wanton misconduct in the operation of the automobile and that as the sole proximate result of such misconduct the plaintiff, Thomas Korzun, was injured, then it would be its duty to return a verdict in favor of the plaintiffs. This instruction also told the jury that the finding of wilful and wanton misconduct would preclude the consideration of contributory negligence on the part of the plaintiff. The defendants objected on the ground that there was no evidence of wilful and wanton misconduct and here assign as error the giving of that instruction.

As stated in *Stone v. Rudolph,* 127 W. Va. 335, 32 S. E. 2d 742, in a negligence action resulting from the operation of an automobile, the defense of contributory negligence or assumption of risk on the part of a plaintiff is not available to a defendant who is guilty of wanton and wilful conduct which operates to injure the plaintiff. *Thornsbury v. Thornsbury,* 147 W. Va. 771, 131 S. E. 2d 713; *Kelly v. Checker White Cab, Inc.,* 131 W. Va. 816, 50 S. E. 2d 888. This instruction as given correctly states the law. 38 Am. Jur., Negligence, § 178.

Negligence and wilful and wanton misconduct are not synonymous terms. The former conveys the idea of heedlessness, inattention or inadvertence, while the latter connotes purpose or design, actual or constructive. *Thornsbury v. Thornsbury,* 147 W. Va. 771, 131 S. E. 2d 713; 38 Am. Jur., Negligence, § 48. In *Thomas v. Snow,* 162 Va. 654, 174 S. E. 837, cited with approval in *Stone v. Rudolph,* 127 W. Va. 335, 32 S. E. 2d 742, and in *Kelly v. Checker White Cab, Inc.,* 131 W. Va. 816, 50 S. E. 2d 888, the Court said: " 'In order that one may be held guilty of wilful or wanton conduct, it must be shown that he was conscious of his conduct, and conscious, from his knowledge of existing conditions, that injury would likely or probably result from his conduct, and that with reckless indifference to con-

sequences he consciously and intentionally did some wrongful act or omitted some known duty which produced the injurious result' 29 Cyc. 510.''

There is evidence in the instant case which shows that defendant David Shahan, without warning his passengers, suddenly began to drive down a mountainous road at speeds of from 100 to 110 miles per hour, at nighttime, over the protest of at least one passenger. This action on the part of the defendant was sufficient under the above definitions to warrant a finding of wilful and wanton misconduct. It may be that speed alone, under different circumstances, would not support such finding, but in view of the evidence of extreme recklessness, we are of the opinion that the jury could find the defendant, David Shahan, was conscious of his wrongful act and was aware that such act would probably result in injury to another. There was, therefore, sufficient evidence of wilful and wanton misconduct to submit such question to the jury and the giving of Instruction Number Six did not constitute error.

The defendants assign as error the action of the court in permitting Trooper Richardson to testify that the exact charge against David Shahan was ''Reckless driving, with willful and wanton disregard of the safety of others''. No objection was made by the defendants to the introduction of this evidence. Objections to the introduction of evidence not made in the trial court can not be raised or considered in the appellate court. *Morgan v. Price,* 151 W. Va.—150 S. E. 2d 897; *The State Road Commission v. Ferguson,* 148 W. Va. 742, 137 S. E. 2d 206; *Floyd v. Chesapeake & Ohio Railway Company,* 112 W. Va. 66, 164 S. E. 28; *Bank v. Bryan,* 72 W. Va. 29, 78 S. E. 400.

Also assigned as error is the submission of the case to the jury on an instruction based on wilful and wanton negligence when there was no allegation thereof in the complaint. This assignment of error and the

one immediately above are without merit for somewhat the same reasons. In neither case did the trial court have the opportunity to rule on the questions now raised. These matters were not brought to the attention of the court in any manner prior to a return of the verdict by the jury. That this Court will not take cognizance of matters not ruled upon by the trial court is well demonstrated by the cogent language of the syllabus of *In re: Estate of Amanda Nicholas,* 142 W. Va. 80, 94 S. E. 2d 452, which follows: "This Court on writ of error or appeal, in the first instance, will not entertain and decide a nonjurisdictional question not passed on by the circuit court." See *Aetna Casualty and Surety Company v. Federal Insurance Company of New York,* 148 W. Va. 160, 133 S. E. 2d 770; *Reece v. Hall,* 142 W. Va. 365, 95 S. E. 2d 648; *Weatherford v. Arter,* 135 W. Va. 391, 63 S. E. 2d 572; *Cook v. Collins,* 131 W. Va. 475, 48 S. E. 2d 161; and *Nuzum v. Nuzum,* 77 W. Va. 202, 87 S. E. 463. Since the trial court has not passed on the questions raised in these two assignments of error, we can not consider them on this appeal.

The final assignment of error to be considered is the defendants' contention that the amount of damages awarded by the verdict is excessive. The testimony adduced at the trial of this case reveals that Thomas Korzun received serious and severe injuries. The doctors who appeared on behalf of the plaintiffs supported the necessity for and cost of the medical treatment rendered to the plaintiff. Doctor Pickett stated unequivocally that the injuries suffered by the plaintiff will result in some permanent restriction in the movement of his back.

It is a well settled legal principle, and it is adhered to by this Court, that in an action where the compensation to which the plaintiff is entitled is indeterminate in character, the verdict of the jury may not be set aside as excessive unless it is not supported by the evidence or is so large that the amount thereof indi-

cates that the jury was influenced by passion, partiality, prejudice or corruption, or entertained a mistaken view of the case. *Sargent v. Malcomb,* 150 W. Va. 393, 146 S. E. 2d 561; *Poe v. Pittman,* 150 W. Va. 179, 144 S. E. 2d 671; *Browder v. The County Court of Webster County,* 145 W. Va. 696, 116 S. E. 2d 867; *Bailey v. DeBoyd,* 135 W. Va. 730, 65 S. E. 2d 82. The evidence in the instant case clearly supports the amount of compensation awarded by the verdict.

For the reasons stated in this opinion, the judgment of the Circuit Court of Monongalia County is affirmed.

*Affirmed.*