**Antonio M. AZORES, Jr., Appellant,**

v.

**Joe G. SAMSON, Appellee.**

**No. 17131.**

Court of Civil Appeals of Texas.

Dallas.

Nov. 15, 1968.

Donald F. Padgett, of Edwards, Sowell & Padgett, Dallas, for appellant.

John D. Crawford, of Locke, Purnell, Boren, Laney & Neely, Dallas, for appellee.

CLAUDE WILLIAMS, Justice.

This is an appeal from a judgment awarding Joe G. Samson damages for personal injuries sustained by him when an automobile driven by Antonio M. Azores, Jr. overturned. We affirm.

In his petition Samson alleged that on or about May 1, 1966 Azores was driving a Volkswagen automobile, owned by Samson, near Lamesa, Texas; that before defendant started operating plaintiff's automobile he assured plaintiff that he was fully awake, had plenty of sleep and would awaken plaintiff, who planned to go to sleep in the back seat, should he get sleepy while driving. Plaintiff alleged that he got in the back seat and went to sleep while defendant was driving the car; that about an hour after defendant started driving, and while plaintiff was asleep, defendant went to sleep at the wheel causing the automobile to leave the highway and overturn, resulting in plaintiff's injuries. He charged that the accident was the result of defendant's negligence in failing to keep a proper lookout and in failing to stop driving when he became sleepy. Defendant responded by alleging the accident was the result of plaintiff's own negligence and that Samson had voluntarily exposed himself to the risk and hazards incident to defendant's driving and assumed the danger incident thereto.

## FACTS

The only testimony relating to the facts both prior to and at the time of the collision in question came from plaintiff and defendant and may be fairly summarized as follows:

Samson and Azores, both natives of the Philippine Islands, were restaurant waiters and had known each other for about a year prior to the accident. Both were employed at the Ports O'Call Restaurant in Dallas. Information had been relayed to them concerning a possible job opportunity in the State of California and Samson advised Azores that he was going to California to investigate same and Azores decided that he would go along with him. Both men owned automobiles and were experienced drivers. Azores had had experiences in making long automobile trips, having driven between New York and Dallas on two occasions. On one of these occasions he had driven his own car alone. Samson was familiar with these facts and had reason to believe, and did believe, that Azores was a careful and prudent driver. It was decided that the two would leave Dallas for their journey to California after they got off work on Saturday night on April 30, 1966. Samson worked at his job at the Ports O'Call Restaurant on Saturday night until about midnight. Azores was supposed to have worked at the Ports O'Call that Saturday night but did not do so. Instead, he worked at the Terrace House as floor manager. He said that he did not have anything to do on this job but to sleep and relax. When asked if he got a lot of sleep on that Saturday night before he left on the trip with Samson he replied: "Yes, I had a lot of rest." The two men met and decided to leave about one o'clock in the morning of Sunday, May 1, 1966. It was also decided that they would go in Samson's Volkswagen. They left Dallas with Samson driving the car and Azores got in the back seat to get some sleep. At first it was raining and Azores stayed awake but when the rain stopped Azores fell asleep and Samson drove the car until about six o'clock in the morning when they stopped at some town in West Texas to eat breakfast and service the automobile. When they started to get back in the car Azores offered to drive but Samson insisted on continuing to drive. Samson suggested that Azores return to the back seat of the car and sleep and rest some more and he would let him drive the car later. Azores resumed his position in the back seat of the car and went to sleep and Samson continued to drive for about an hour and a half when he started getting sleepy and pulled the automobile to the roadside and came to a complete stop. At this time Azores was awake and Samson asked him: "Do you feel like driving now?" And Azores answered, "Sure, right away," and jumped in the front seat under the wheel. Samson remained in the front seat with Azores for a while and told him that if he felt sleepy to pull off the road and stop and wake him up. Azores assured him that he was perfectly all right and not sleepy. Samson then got in the back seat and dozed off while Azores proceeded to drive. After driving about thirty or forty-five minutes Azores testified that he started blinking his eyes but continued driving and did not awaken Samson. He said the next time he "blinked" he didn't wake up and the car left the highway and turned over three or four times. Samson testified that based upon the knowledge of the amount of sleep and rest that Azores had had prior to the time he got under the wheel to drive that he had no reason to believe that Azores might doze off and go to sleep.

In answer to special issues submitted to them the jury found: (1) that Azores became sleepy while driving the automobile; (1–A) that Azores continued to drive the automobile after he became sleepy; (2) that such act was negligence; and (2–A) such negligence was a proximate cause of the occurrence in question; (3) that Azores failed to keep a proper lookout; (4) that such failure was a proximate cause of the occurrence. The jury acquitted Samson of the various acts of attributory negligence

alleged. Special Issue No. 11 inquired: "Do you find from a preponderance of the evidence that on the occasion in question Joe Samson knew and appreciated the danger, if any, of Antonio Azores going to sleep while driving?", to which the jury answered "Yes". Special Issue No. 12 inquired: "Do you find from a preponderance of the evidence that Joe Samson voluntarily exposed himself to such danger, if any?", to which the jury answered "Yes". The jury found the amount of damages to be $5,000.

Samson moved the court to set aside and disregard the jury's answers to Special Issues 11 and 12 and render judgment for him on the remaining portion of the verdict. The court granted the motion, finding that the same were not supported by any evidence, and proceeded to render judgment in favor of Samson against Azores for the amount of damages found by the jury, plus stipulated medical expenses.

## OPINION

Appellant Azores predicates his appeal upon the sole ground that the trial court erred in disregarding the answers of the jury to Special Issues Nos. 11 and 12 thereby holding that there was no evidence to support appellant's defense of *volenti non fit injuria*. Alternatively, appellant says that if the court found the evidence to be insufficient to support the jury findings to the *volenti* issues then the judgment should be reversed and remanded. Appellant expressly waives all other assignments of error.

■ The defense of *volenti non fit injuria* (in law, no injury is done where the person injured consents) is recognized in Texas. The necessary legal requirements for such a defense are (1) the plaintiff has knowledge of *facts* constituting a dangerous condition or activity; (2) he knows the *condition* or *activity* is dangerous; (3) he appreciates the nature or extent of the danger; and (4) he voluntarily

exposes himself to this danger. Robert E. McKee, General Contractor, Inc. v. Patterson, 153 Tex. 517, 271 S.W.2d 391 (1954); Halepeska v. Callihan Interests, Inc., 371 S.W.2d 368 (Tex.Sup.1963); J. & W. Corporation v. Ball, 414 S.W.2d 143 (Tex.Sup.1967). Our Supreme Court has emphasized that for *volenti* to be applicable there must be actual knowledge and appreciation of the facts which constitute the dangerous condition or such must be so open and obvious that the plaintiff must be charged by law to have that knowledge and appreciation. Dee v. Parish, 160 Tex. 171, 327 S.W.2d 449 (1959). On at least two different occasions in recent years our Supreme Court has pointedly emphasized the harshness of the *volenti* doctrine and warned that same must be kept within justifiable limits rather than be extended. Halepeska v. Callihan Interests, Inc., 371 S.W.2d 368 (Tex.Sup.1963); and Ellis v. Moore, 401 S.W.2d 789 (Tex.Sup.1966). In Ellis v. Moore, supra, the Supreme Court commented:

"Generally speaking, cases should be determined on the basis of negligence and contributory negligence. Our disposition is not to extend the doctrine of assumed risk so as to excuse negligent conduct on the part of the defendant. As above indicated, it is a harsh doctrine, and we are not disposed to relax the rules set down for the escape from liability under it."

■■ In determining the "no evidence" points we are, of course, governed by the well-settled principle of law that we must disregard all evidence adverse to the findings of the jury and consider only the evidence favorable to such findings, indulging every legitimate conclusion which tends to uphold them. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660 (1952). The jury findings may not be disregarded by either the trial court or by this court if the record discloses any evidence of probative value which, with inference that may be properly drawn therefrom, will reason-

ably support the same. Lynch v. Ricketts, 158 Tex. 487, 314 S.W.2d 273 (1958); Singer v. Singer, 150 Tex. 115, 237 S.W.2d 600 (1951).

■ The rule is well settled that any ultimate issue may be established by circumstantial as well as direct evidence and that the jury may draw reasonable inferences and deductions from the evidence adduced before it. Lynch v. Ricketts, supra.

■ Inasmuch as the question of knowledge and appreciation of danger and a voluntary assumption of a risk or hazard, as inquired about in Special Issues 11 and 12, pose problems which are subjective in nature, it is not unreasonable to permit the jury to take into consideration any reasonable inference which may be deduced from the direct or circumstantial evidence both at the time of the accident and within relevant limits prior thereto. In considering the question of inferences which may be considered in cases of this kind it must be remembered that the party having the burden of proof upon the issue must produce evidence to warrant the jury in believing that an inference of the issuable fact is more probable or reasonable than an inference of its nonexistence. Paris & M. P. R. Co. v. Russell, 104 S.W.2d 650 (Tex.Civ.App., Eastland 1937). Thus, if an inference consistent with the existence of a fact in issue is but equally as valid as an inference of its nonexistence, then the jury may not determine the question. Texas Pac. Fidelity & Surety Co. v. Hall, 101 S.W.2d 1050 (Tex.Civ.App., Eastland 1937), and authorities therein cited. We had occasion to apply this rule in the recent case of Cambridge Mutual Fire Ins. Co. v. Shoemake, 403 S.W.2d 858 (Tex. Civ.App., Dallas 1966), in which we quoted the rule to the same effect from Republic Nat. Life Ins. Co. v. Bullard, 399 S.W.2d 376 (Tex.Civ.App., Houston 1966).

■ When we review the entire record in the light of these rules we find no difficulty in reaching the same conclusion that was reached by the trial court to the effect that there is no evidence of probative value to support the jury's answers to Special Issues 11 and 12 relating to the defense of *volenti non fit injuria.* There is absolutely no evidence in this record, either direct or circumstantial, that Samson knew or appreciated any facts which would support the idea of danger of Azores going to sleep while driving. Nor is there any evidence of probative value that Samson voluntarily exposed himself to such alleged danger. As far as direct evidence is concerned, we have the testimony of both parties that at the time Azores took control of the automobile he was not sleepy or tired; that he had assured Samson that he was all right and that if he became sleepy later on he would awaken Samson. Samson testified that he had no reason to know that Azores would fall asleep after driving some thirty or forty-five minutes down the highway and that had he known of such fact he would not have relinquished the control of the automobile. As to circumstances and inferences, we have the undisputed testimony that Azores slept and rested the night before while he was on duty at the Terrace House; that he slept and rested in the back seat of the car from one o'clock until six o'clock in the morning while Samson drove; that he again slept and rested in the automobile between six o'clock and seven-thirty, all of this being known to Samson. Additionally, we have the past experience of Azores in making long drives by himself without going to sleep, that fact being known to Samson. All of these facts, circumstances and inferences negative the jury's affirmative answers to the two issues submitted. The inferences, rather than supporting appellant's theory, impel the conclusion that Azores was not sleepy and there was no danger which could be known, appreciated and assumed by Samson. Accordingly, we find that since there was no evidence of probative force to support the jury's answers to the issues in question the trial court was correct in set-

**406**

ting them aside and rendering judgment in favor of plaintiff.

Our Texas courts have had occasion to set aside jury findings on the issues of *volenti non fit injuria* where the same were not supported by the evidence and render judgment, as did the trial court in this case. McCarty v. Purser, 379 S.W.2d 291 (Tex.Sup.1964); Chickasha Cotton Oil Co. v. Holloway, 378 S.W.2d 695 (Tex.Civ. App., Amarillo 1964); Fabens Ice Co. v. Kosinski, 339 S.W.2d 546 (Tex.Civ.App., El Paso 1960, writ ref'd n. r. e.); and J. A. Robinson Sons, Inc. v. Ellis, 412 S.W.2d 728 (Tex.Civ.App., Amarillo 1967).

In other jurisdictions the same results obtained in cases involving similar factual situations. In Davis v. Sykes, 202 Va. 952, 121 S.E.2d 513 (1961), the facts were very similar and the court refused to uphold the defense of *volenti*. There the evidence revealed, as here, that the owner had ridden with the defendant before; that he was a careful driver; that when the journey began he was driving perfectly, and did not say he was sleepy and gave no cause for alarm. To the same effect see Gower v. Strain, 169 Miss. 344, 145 So. 244 (1933); Kakluskas v. Somers Motor Lines, Inc., 134 Conn. 35, 54 A.2d 592 (1947); and Freedman v. Hurwitz, 116 Conn. 283, 164 A. 647 (1933).

The principal case relied upon by appellant, Krueger v. Krueger, 197 Wis. 588, 222 N.W. 784 (1929), is vastly different factually from the case under consideration. There the record disclosed that plaintiff knew defendant's prior experience as a driver and knew that the defendant had lost sleep and suffered discomfort during the night preceding the final stages of the journey. There the court held that plaintiff was bound by knowledge of such facts and precluded from recovery.

We sustain appellee's counter point that there is a recognized rule of law which would, under the facts which appear without dispute in this record, negate the applicability of the doctrine of *volenti non fit injuria*. In determining the necessary element of the doctrine of *volenti*, that of voluntary assumption of risk, the law recognizes that where one is assured of safety or a promise of protection against the risk, he does not assume it unless the known danger is so extreme that there can be no reasonable reliance upon such an assurance. Restatement of the Law of Torts, 2d Ed., § 496 E, Subdivision (2), Comment a. The record is without dispute that at the time Azores took control of the automobile he assured Samson that he had had some sleep and rest and agreed to awaken him if he became sleepy. With such assurance, and with no evidence that Samson could not reasonably place reliance upon same, we think it cannot be reasonably said that Samson assumed the risk and danger.

We have given careful consideration to all of appellant's points and finding the same to reflect no reversible error, the judgment of the trial court is affirmed.