AIDA CLEMENTS, *administratrix, etc.*

*v.*

MICHAEL NOYCE STEPHENS, *et al.*

(No. 13234)

Decided January 14, 1975.

330

*Preiser & Wilson, W. Dale Greene* for appellant.

*Savage, MacCorkle & Rippetoe, D. J. Savage* for appellees.

HADEN, CHIEF JUSTICE:

This is an appeal from the final order of the Circuit Court of Kanawha County affirming, as "plainly right", the judgment of the Common Pleas Court of that county which had previously overruled plaintiff's motion for a new trial and confirmed a judgment entered upon a jury verdict exonerating the defendant automobile operator from liability in this civil action for wrongful death.

The cause of action arose from a single car accident occurrence on the West Virginia Turnpike of May 25, 1963. At the time and place of the accident, John Dillon Frudd, the plaintiff's decedent, was a guest passenger in an automobile owned by Stephen Stewart and operated by Michael Noyce Stephens, the appellee.

Plaintiff instituted this litigation in 1965. The action has been thus far tried three times. The first trial resulted in a verdict for the plaintiff in the amount of $1,000.00, but was set aside on motion of the plaintiff. The second trial ended with a "hung" jury. The third trial concluded in a verdict and judgment for the defendant Stephens; it is the predicate of this appeal.

According to the evidence, the ill-fated automobile journey originated at a military base in Charleston, South Carolina, at approximately 5:00 o'clock p.m. on May 24, 1963. The original occupants of the car were Stewart, Stephens and another serviceman, Bruce Taylor, all of whom were beginning weekend passes. Stewart's destination was his home in Ohio, Stephens' destination was Belle, West Virginia; and Taylor was traveling to his home in Institute, West Virginia. The

three had agreed to share the travel expenses. Stephens also agreed to share the chore of driving with Stewart.

Frudd, an Army serviceman stationed at Ft. Bragg, North Carolina, had been granted military leave and was hitchhiking from Ft. Bragg to his home in Michigan. His travels en route brought him to Fancy Gap, a small town in southwestern Virginia, near the North Carolina border. There he solicited a ride in the Stewart automobile and joined its three occupants. The time of this occurrence was not established by the evidence.

At the southern terminus of the West Virginia Turnpike, at Princeton, West Virginia, the Stewart automobile stopped again to pick up two more servicemen hitchhiking home on leave—one Davis and John McCallister, residents of Eccles and Huntington, West Virginia, respectively. This stop occurred at approximately 1:30 o'clock a.m. on May 25 while Stewart was driving. Davis and McCallister each contributed one dollar ($1.00) toward defraying the expenses of the turnpike toll and gasoline.

After traveling approximately thirty miles north on the turnpike, Davis exited the automobile at the Eccles bridge where it over-crossed the West Virginia Turnpike. Shortly thereafter, the remaining occupants stopped just north of the Beckley interchange at the "Glass House" for coffee and soft drinks. After an interval of about twenty minutes, they resumed their journey northward on the turnpike with Stephens driving, Stewart resting or sleeping in the adjoining front seat area, and the remaining three passengers sleeping in the rear of the car. According to the testimony of John McCallister, Frudd fell asleep almost immediately after the automobile departed the restaurant and he, McCallister, remained awake for about fifteen to twenty minutes to observe the demeanor of the driver. Observing nothing of concern in Stephens' manner of driving, he too soon fell asleep.

Just south of the Marmet area of the turnpike at approximately 3:00 o'clock or 3:15 o'clock a.m., the automo-

bile left the northbound lane of the highway, crossed the southbound lane, and struck the hillside adjacent to the southbound lane. Frudd and McCallister were thrown from the vehicle. Frudd suffered serious injuries culminating in his death approximately one week later.

When the accident occurred the weather was relatively clear, although McCallister noted the conditions at the scene as "misting" or possibly foggy. Speed was not a factor in the accident. No proof was offered that Stephens or Stewart had fallen asleep or had become drowsy while driving prior to the accident. In fact, defendant Stephens specifically denied falling asleep while driving, although acknowledged he was dazed momentarily immediately prior to the accident. Stephens also testified that he had experienced some difficulty in turning the wheel of the car, implying possible mechanical defect in the car's steering mechanism. But Stephens alone spoke to this point and he conceded that the car, a 1955 Buick, otherwise appeared to be in sound mechanical condition during the time he was in control of the vehicle.

During the latest trial, the principal contentions of the defense were (1) that the driver was not negligent in the operation of the motor vehicle; that, consequently, his actions did not proximately cause the death of plaintiff's decedent; and (2) that plaintiff's decedent either contributed to his own injury or assumed a known risk of danger in accepting a ride and continuing to ride with Stephens and Stewart under the circumstances. At the conclusion of the trial, the court refused to instruct the jury on the theory of contributory negligence, ruling it was not an applicable theory in the case. On the other hand, the court required plaintiff to amend certain proffered instructions to include the theory of assumption of risk. The court also gave certain instructions offered by defendant expressing the defense of assumption of risk.

On this appeal the plaintiff makes three assignments of error. The first is a procedural point. Before the first trial began the trial court, over objection of the plaintiff,

permitted the defendant to amend his answer to include the assertion of assumption of risk as an additional affirmative defense. Plaintiff contends that *Rule* 8(c), W. Va. R.C.P. prohibits the assertion of an affirmative defense after the pleadings are closed, relying upon the case of *Adkins v. City of Hinton*, 149 W. Va. 613, 142 S.E.2d 889 (1965). There is no merit to this contention. The *Adkins* case is inapposite because there, the affirmative defense was never pleaded and no showing was made to demonstrate amendment at trial, by express or implied consent. Consequently, this Court quite properly refused to consider the issue of assumption of risk on appeal. See also, *Dunning v. Barlow & Wisler, Inc.*, 148 W. Va. 206, 133 S.E.2d 784 (1963).

Conversely, when a trial court has permitted amendment by a party to assert an affirmative defense, the ground rules on review are quite different. Appropriate to this case we held in *Nellas v. Loucas*, ___ W. Va. ___, 191 S.E.2d 160 (1972), "A motion to amend a pleading is addressed to the sound discretion of the trial court and such discretion will not be disturbed on appeal unless there is a showing of abuse of discretion.", Syllabus Point 1., *id.* That case, and one more recently decided, encourages amendment to promote the ends of justice:

> "The purpose of the words 'and leave [to amend] shall be freely given when justice so requires' in Rule 15(a) W. Va. R.Civ.P., is to secure an adjudication on the merits of the controversy as would be secured under identical factual situations in the absence of procedural impediments; . . ." Part *Syllabus* point 3., *Rosier v. Garron, Inc.*, ___ W. Va. ___, 199 S.E.2d 50 (1973).

Accordingly, we apprehend no error in the court's discretionary grant of leave to amend the pleading. On the other hand, the discussion which follows should indicate that the mere permission to assert a defense at trial does not necessarily authorize or warrant the giving of instructions to the jury on that point. The giving or refusal of instructions is not controlled merely by issues developed in pleading, but also depends upon the quan-

tum of evidence introduced at trial supporting those issues. *Britton v. South Penn Oil Co.*, 73 W. Va. 792, 81 S.E. 525 (1914).

Addressing the two substantive issues of the case, plaintiff insists that a review of the evidence requires this Court to rule that there was reversible error in the trial court's rulings which (1) allowed the jury to consider exoneration of the defendant driver on the theory that plaintiff's decedent assumed the risk of injury or death and; (2) refused to direct the jury to return a verdict in plaintiff's favor on the issue of liability. The appellant must prevail on the first question before it is appropriate for this Court to consider the second.

Although the appellee argues to the contrary in his brief, there appears to be no evidence in the record of the case to charge plaintiff's decedent with knowledge of the fatigued condition of the operator. None of the three witnesses who testified concerning the accident—McCallister, defendant Stephens, or the investigating officer—gave any indication that decedent Frudd knew or should have known of any danger to himself by reason of Stephen's fatigued condition. In fact, the evidence would seem to demonstrate that Frudd slept most of the time he was in the automobile except, according to witness McCallister, that he was temporarily awake when he, McCallister, and Davis were picked up at Princeton and during the time they all went into the Glass House restaurant. Frudd never regained consciousness after the accident. Stephens, the only testifying witness present at the time Frudd joined the group in Virginia, gave no testimony that would imply that Frudd was advised concerning any of the details of the journey or that the travelers had toiled and journeyed without respite.

In addition to recounting the circumstances of the trip, Stephens also testified to another factor which probably contributed to his fatigue. He stated that beginning on the evening of May 23rd, before his leave period beginning at 4:00 o'clock the next afternoon, he, a ship's baker, had baked in the ship's galley during the

a.m. night hours, and that he was able to snatch a few hours sleep only during the late morning of the 24th. Again, however, the evidence does not demonstrate that plaintiff's decedent had been advised of any of these circumstances. While one might speculate that plaintiff's decedent had some conversation with the occupants concerning the circumstances of their journey, the evidence adduced fails to elevate idle speculation to certain fact or competent inference.

The defense of assumption of risk is a frequent and oft-effective defense to a damage claim asserted by a guest passenger against the owner or operator of a motor vehicle. The viability of the defense, however, requires credible evidence that the guest passenger knew or in the exercise of reasonable care should have known of the dangers involved and that he have a reasonable opportunity to extricate himself from such danger, and because of venturousness, chose to flirt with the apparent danger and, accordingly, did not extricate himself. *See, Cross v. Noland,* ____ W. Va. ____, 190 S.E.2d 18 (1972). More succinctly stated, "Assumption of risk is available as a defense only where one places himself in a posture of known danger with an appreciation of such danger." *Syllabus* point 2., *Korzun v. Shahan,* 151 W. Va. 243, 151 S.E.2d 287 (1966). Proof of plaintiff's knowledge and volition are essential preconditions to successful invocation of the assumption of risk defense. *E.g., Yates v. Mancari,* 153 W. Va. 350, 168 S.E.2d 746 (1969); *Hollen v. Linger,* 151 W. Va. 255, 151 S.E.2d 330 (1966); *Korzun v. Shahan, supra; Spurlin v. Nardo,* 145 W. Va. 408, 114 S.E.2d 913 (1960); *Wright v. Valan,* 130 W. Va. 466, 43 S.E.2d 364 (1947); *Powell v. U.S. Steel Corp.,* 305 F.Supp. 645 (S.D. W. Va. 1969).

The requisite knowledge, actual or implied, acquired by a guest passenger of the danger arising where the driver's facility to operate the vehicle is impaired or diminished by lack of sleep, is aptly expressed in 5 Blashfield, *Automobile Law and Practice* § 215.32 (1966):

> "A guest, with knowledge that the driver has been without his customary sleep under condi-

tions of discomfort, who nevertheless accepts the invitation to accompany such driver, may thereby be considered as assuming the risk of any injury arising from the driver falling asleep; but where the guest does not know of such lack of sleep, or of other circumstances to apprise him of the danger in that regard, he does not assume that risk." *Id.*, pp. 400, 401.

Similar expressions of this rule of reason may be found in several decisions from other jurisdictions. In *Ching v. DyFoon*, 143 Cal. App. 2d 129, 299 P.2d 668 (1956), a guest passenger was injured in a Los Angeles traffic accident when the host driver fell asleep and drove into the rear of a stopped vehicle, thereby concluding an aimless vehicular odyssey of this guest, others, and the host, through several states and northern Mexico over a period of approximately one week with only sporadic stops for sleep or refueling. Under those rather bizarre circumstances, the court held that the defense of assumption of risk was certainly a consideration for the jury, saying:

"It may be said that the evidence was also sufficient to support a finding that appellant had assumed the risk of respondent's conduct, for the jury could well have inferred from the evidence herein that appellant, because of her knowledge of the group's activities since they left San Francisco, and because of her questioning of respondent as to whether or not he was tired prior to the commencement of this drive, fully realized the danger of driving in Los Angeles traffic in a sleepy condition. They could also infer that because respondent had been dating appellant, he would try to complete the drive which was being made at her request instead of stopping in the middle of the afternoon on a busy city street to take a nap and that she realized this. etc., etc." *Id.*, p. 673, Pacific Reporter.

Likewise, *see, Ledford v. Klein*, 87 N.W.2d 345 (N.D. 1957); *Miller v. Flashner*, 190 N.Y.S.2d 420, 8 A.D.2d 944 (1959); *Cross v. Foster*, 378 P.2d 903 (Wyo. 1963).

Conversely, where the guest passenger was unaware of the sleepy condition of the driver, or of circumstances which should have alerted the guest to the danger, the courts have uniformly held that the guest was not chargeable with assumption of risk. *See, Hartlerode v. Edwardsen,* 219 Cal. App. 2d 517, 33 Cal. Rppr. 346 (1963); *Lanning v. Brown,* 377 S.W.2d 590 (Ky. 1964); *Taylor v. State Farm Mutual Automobile Ins. Co.,* 171 So.2d 816 (La.App. 1965); *Shine v. Wujick,* 89 R.I. 122, 150 A.2d 1 (1959); *Kingwell v. Hart,* 45 Wash. 2d 401, 275 P.2d 431 (1954).

This court has recently considered the question of assumption of risk by a guest passenger where the driver fell asleep and lost control of the vehicle resulting in serious injuries to both. In *Hall v. Groves,* 151 W. Va. 449, 153 S.E.2d 165 (1967), the plaintiff passenger accompanied the defendant motorist upon a round-about, long-drawn-out and aimless trip of many unnecessary miles of uncertain destination and of approximately six hours duration. Although both parties together consumed a six-pack of beer early in the meandering journey and the accident happened at 1:00 o'clock a.m. when, according to the defendant, he "must have gone to sleep at the wheel," *id.* at p. 455 of the West Virginia Report, the plaintiff was held not to be chargeable with assumption of risk. Speaking for a unanimous Court, the late Judge Haymond obviously concluded the issue on plaintiff's lack of knowledge of the imminent danger of the driver falling asleep. After noting the defendant's admission, the Court said:

> ". . . and suddenly and without any opportunity of the plaintiff to protest or prevent the defendant Groves from so doing, he drove the automobile off the highway and to and against the abutment located near the right edge of the road and caused the injuries of which the plaintiff complains. There is, however, nothing in the evidence to indicate that the defendant operated the automobile in a negligent manner until at and immediately before the collision occurred;

> and the conduct of the plaintiff in accompanying
> the defendant upon the trip does not of itself
> constitute either contributory negligence or as-
> sumption of risk." *Id.*, pp. 455, 456, *supra.*

That part of the *Hall* decision is certainly compatible
with common sense approaches summarized by the
*Blashfield* reference, *supra.* Except for the aspect of
moderate consumption of alcohol in *Hall*, that case and
this are factually similar as to accident circumstances.
For our purposes, the rationale in *Hall v. Groves, supra,*
definitely rejects "assumption of risk" as a defense
available through inference. In other words, the point-
less journey, the drinking-while-driving, without a show-
ing of intoxication, and the late hour of the accident
occurrence, did not give rise to a presumption that a
participating passenger assumed a known risk of immi-
nent danger.

In our discussion of the instant litigation, we are not
unmindful of the fact that the accident occurred at an
hour which, by most persons, is passed in sleep. That
was also true in *Hall v. Groves, supra,* and likewise not-
ed by Judge Haymond, "though such use of the high-
ways of this State near the midnight hour may not meet
with universal approval . . ." *id.* at p. 455, *supra.* The
time factor alone, however, does not justify the instruc-
tion on risk assumption.

Servicemen, like many others who may be called upon
to travel or to perform services at different hours in the
day or night, cannot fairly be presumed to be subject to
ordinary sleep patterns; nor does this circumstance fur-
nish evidence form which inference might be drawn. In
*Gower v. Strain,* 169 Miss. 344, 145 So. 244 (1933), the
fact that the automobile operator, a physician, had only
four hours sleep prior to embarking upon a journey,
terminating in an accident when he fell asleep, was held
not to warrant instruction on assumption of risk.

> "It is a matter of common knowledge that the
> amount of sleep ordinarily required by different

> people varies largely, and that, when the occasion requires, people pursue their daily vocations and discharge responsible duties after loss of sleep, without apparent impairment of their faculties." *Id.*, p. 247 of the Southern Reporter.

The hour at which the accident occurred, without more, furnished no basis to support instructions on assumption of risk.

Based upon the foregoing discussion, the conclusion is apparent and ineluctable. In order to justify instructions on assumption of risk, the defendant should have offered proof that the injured party knew or should have known that the driver of the automobile was so fatigued or sleepy that his driving ability might thereby be impaired, and second, proof that after learning of or after having reasonable opportunity to learn of the situation, he voluntarily continued as a passenger or failed to take other reasonable precautions for his own safety. The evidence in this case, we believe, fails in both requirements. Not only is there a total absence of evidence showing that plaintiff's decedent was advised of the circumstances of the journey, nothing in the record indicates any forewarning of the danger which could have been discovered and acted upon by the decedent. There can be no doubt that plaintiff's case was prejudiced by the jury's consideration of this defense. "The giving of an instruction, having no basis or foundation in the case in which it is given, if prejudicial will constitute reversible error." *Syllabus* point 3., *Herold v. Clendennen*, 111 W. Va. 121, 161 S.E. 21 (1931); accord, *Groves v. Groves*, 152 W. Va. 1, 158 S.E.2d 710 (1968). The case is reversed on this point.

The final matter for resolution also presents a vexatious problem. Is the plaintiff, now disencumbered of defending against assumption of risk, entitled by the evidence of this case to a directed verdict on the issue of liability?

To answer in the affirmative, this Court would have to rule that the act of falling asleep while driving consti-

tutes negligence as a matter of law. A further reference to the case of *Hall v. Groves, supra,* furnishes questionable support for this proposition. There, this Court stated in unequivocal terms that:

> "The liability of defendant Groves for the injuries sustained by the plaintiff is clearly established by the evidence. He was guilty of negligence which was the proximate cause of the injuries to the plaintiff." *Id.,* at p. 455, West Virginia Report.

> . . . .

> "... Under the undisputed evidence disclosed by the record the plaintiff, upon proper motion, would have been entitled to a directed verdict upon the issue of the liability of the defendant Groves." *Id.,* at p. 456, *supra.*

As noted, the *Hall* Court discounted all factors except for the driver falling asleep and losing control of the automobile and concluded the driver to be negligent, although exonerating the passenger from contributory negligence or assumption of risk. At first blush, such strongly worded conclusions on similar facts appear to preclude a re-examination of the subject. That case, however, arrived at this Court in a different posture than the one we are now considering. In *Hall,* plaintiff had recovered a judgment in the trial court entered pursuant to a jury verdict favoring him on the issue of liability and had appealed on the sole issue of an inadequate award of damages. The case actually turned on that point and this Court's statements agreeing with the jury verdict are gratuitous to the decision and must be regarded as *obiter dicta.*

We believe the more appropriate perspective on the problem is indicated by the discussion found in 2 Blashfield, *Automobile Law and Practice* § 103.10 (1965):

> "In an ordinary case one cannot go to sleep while driving an automobile without having relaxed the vigilance which the law requires, and it lies within his own control to keep awake or to

cease from driving, and so the mere fact of his going to sleep while driving is a proper basis for an inference of negligence sufficient to make out a prima facie case against him for injuries sustained by another while so driving, and sufficient for a recovery if no circumstances tending to excuse or justify his conduct are proved.

. . .

"The degree of negligence attributable to a driver falling asleep while operating his vehicle is a question determinable on the particular facts of the case." *Id.,* pages 256-57.

Despite Stephens' protestations to the contrary, the evidence in the instant case could have warranted a factual determination that he did fall asleep just prior to the accident, as well as a finding that his conduct amounted to actionable negligence, considering the circumstances of the journey. Since, however, this factual determination was not made, whether by reason of lack of primary negligence on the driver's part or by reason of improper instruction on assumption of risk, the posture of the case and the law's general policy against invading the province of the jury do not favor the direction of a verdict here. This Court deems it inadvisable, if not improper, to reverse a jury verdict and also stigmatize the consequences of a driver falling asleep by declaring, as a matter of law, that such conduct constitutes negligence *per se*. As with violations of road laws, such conduct may be *prima facie* evidence of actionable negligence if it was the proximate cause of the injuries for which plaintiff complains. See and compare on the *prima facie* evidence rule, *Vandergrift v. Johnson,* ___ W. Va. ___, 206 S.E.2d 515 (1974); *Spurlin v. Nardo, supra; Barniak v. Grossman,* 141 W. Va. 760, 93 S.E.2d 49 (1956); *Morris v. City of Wheeling,* 140 W. Va. 78, 82 S.E.2d 536 (1954); *Moore v. Skyline Cab,* 134 W. Va. 121, 59 S.E.2d 437 (1950). On the facts of this case, plaintiff's decedent is not entitled to a directed verdict on the issue of liability.

For the foregoing reason, the judgment of the Circuit Court of Kanawha County is reversed and the case is remanded for a new trial in accordance with the principles expressed in this opinion.

*Reversed and remanded;*
*new trial awarded.*